**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Micheal Davis Jr.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 24 C 1348** |
| v. ) | |
| ) | **Judge Jorge Alonso** |
| **City of Chicago and Roseland Hospital,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Defendants' motions to dismiss [32] [34] are granted. For the reasons set forth herein, this case is dismissed with prejudice. Civil case terminated.

## STATEMENT

In this civil rights case, Plaintiff, Micheal Davis, Jr., *pro se*, alleges that Chicago police officers have a practice of picking him up at his residence and taking him to hospitals, including to Roseland Community Hospital ("Roseland Hospital"), without warning or consent. Further, he alleges that he received treatment at Roseland Hospital that caused ongoing health problems. Defendants, the City of Chicago and Roseland Hospital, moved to dismiss Plaintiff's original complaint for failure to state a claim, and the Court granted the motions. Plaintiff has filed an amended complaint, and Defendants have filed a second round of motions to dismiss. For the following reasons, the Court concludes that Plaintiff does not state a claim in his amended complaint, and dismissal with prejudice is appropriate.

**I.  Background and Procedural History**

Plaintiff's original complaint centered on an incident in October 2023, when he lost consciousness while looking for a car key in his yard and later awoke at Roseland Community Hospital ("Roseland Hospital"). He was told that Chicago police officers brought him there. He has allegedly suffered from health problems, including memory loss as well as bleeding and loss of function in his penis, ever since this incident. He also alleged that, a month or months before this incident, unnamed Chicago police officers drove him somewhere and dropped him off, forcing him to walk home, returning hours later.

Defendants moved to dismiss for failure to state a claim. Plaintiff neglected to file a response. The Court granted the motions to dismiss for failure to state a claim, reasoning that Plaintiff's allegations described conduct that was "just as consistent with lawful conduct as it [was] with wrongdoing," and the allegations were "too vague to provide notice to defendants of the contours" of Plaintiff's civil rights claims. *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009).

The Court granted Plaintiff leave to file an amended complaint, if he believed he could correct the pleading defects the Court had identified.

In the present amended complaint, Plaintiff broadens his allegations, claiming that the Chicago Police Department has a "pattern or practice" (Am. Compl. at 6, ECF No. 30) of "coming to [his] residen[ce]," beginning in 2008 or 2009, and "transporting him to hospitals," usually resulting in his release on the following day. (*Id.* at 4.) He alleges that, when taken to these hospitals, he has been subjected to a "behind the back needle attack" and given injections against his will. (*Id.*)

In the first such incident, in "mid-2008," he was "looking down in the grass for [his] loose single car key" when, he claims, he was "attacked by a city of Chicago police officer," although "he never saw nothing coming." (*Id.*) He recalls entering Roseland Hospital, being injected with a needle, and then being discharged after "six days of constant bleeding from groin area." (*Id.*)[1]

In 2020, Plaintiff alleges, he was arrested at his home when a Chicago police officer "coach[ed]" Plaintiff's grandmother to say he had threatened her for drug money, although he had just received a stimulus check and had no need of money at that time. (*Id.* at 5.)

In the next incident, in June 2022, Plaintiff returned home from a date to find his sister standing outside, trying to tell him something. Before he could make out what she was saying, "CPD pull[ed] up," put him in a police car, and took him to Roseland Hospital. Plaintiff promptly "turn[ed] around and [ran] . . . all the way back home." (*Id.*) He found his sister standing in the same spot. He "proceed[ed] to look for [his] belongings[,] before being place[d] back into the same police car again by the same . . . officer[s]," who drove him to Holy Cross Hospital.

Next, in August 2023, Plaintiff was at home having a quiet drink when two police officers rang the doorbell. Plaintiff answered the door, and he was immediately "pull[ed] out of [his] house." (*Id.*) He does not say what happened next, except that it took him "well over 12 hours [to] walk back home." (*Id.*)

In September 2023, Plaintiff alleges, he was asleep in his car in front of his home "for no longer than 10 to 15 minutes before the cops show[ed] up and . . . took [him]" to Holy Cross Hospital. (*Id.* at 6.)

---

[1] Plaintiff's *pro se* complaint is difficult to follow in some places because he seems to jump around in time. The complaint seems to allege that the incident that began with a search for a car key took place in "mid-2008," but given the similarity of these allegations (Am. Compl. at 4) to allegations that Plaintiff connects to the October 2023 incident (Am. Compl. at 6), it may be that both passages refer to the October 2023 incident. The Court will take the complaint at face value and assume that two strikingly similar incidents occurred in mid-2008 and October 2023.

Finally, on or around October 28, 2023, Plaintiff alleges, he "drop[ped] just a single car key in [his] front lawn" and was "tak[ing] some time to find [his] one car key" when "out of the corner of [his] eye" he "glimpse[d] . . . a police uniform." (*Id.* at 5.) He admits that he is "not sure what exactly" happened, and the "next thing [he] remember[s]" is walking through the doors of Roseland Hospital. During his stay there, he suffered bleeding "due to their negligence," and a "lady with [a] computer on wheels" forced an injection on him. (*Id.* at 6.)

The City of Chicago and Roseland Hospital have filed separate motions to dismiss. The Court set a deadline for Plaintiff to file a response to Defendants' motions, but Plaintiff filed no response.

## II. <u>Legal Standards</u>

"A motion under [Federal] Rule [of Civil Procedure] 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under this standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In assessing Defendants' motions to dismiss, the Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). However, it need not "accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

As in the previous round of briefing, Plaintiff neglected to file a response to the motions to dismiss. This alone is not a proper basis for dismissal, unless (a) the circumstances show an intent to abandon the suit, (b) they amount to a failure to prosecute it, or (c) dismissal acts as a sanction for the nonmovant's inaction. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). If none of those grounds for summary dismissal obtains, then the Court must evaluate the sufficiency of the complaint and the arguments for dismissal without the plaintiff's input. In performing this evaluation, the Court must bear in mind that "[i]t is the defendant's burden to establish the complaint's insufficiency," *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), but the Court need not go so far as to "'do the plaintiff's research and try to discover whether there might be something to say against the defendant's reasoning.'" *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (quoting *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir.

1999)). Where the defendant provides "plausible reasons for dismissing [the] complaint," and the plaintiff does not respond, the Court may consider the plaintiff to have "effect[ively] defaulted" and dismiss the complaint for the reasons given. *Kirksey*, 168 F.3d at 1041; *see Navarro v. City of Aurora*, No. 21 C 6288, 2022 WL 17960678, at *3 (N.D. Ill. Dec. 27, 2022).

Here, the Court warned Plaintiff that "failure to respond to the motions to dismiss could lead to this case being dismissed for want of prosecution." (Mar. 12, 2025 Minute Entry, ECF No. 38.) That warning might suffice to support dismissal without prejudice, but Defendants ask for dismissal *with* prejudice, and the Court's isolated warning does not justify that harsh sanction, which would operate as an adjudication on the merits. *Turner v. Dollar Tree Stores, Inc.*, No. 22-CV-06736, 2024 WL 3797323, at *3 (N.D. Ill. Feb. 20, 2024). To determine whether that result is appropriate, the Court begins by reviewing the amended complaint and the motions to dismiss to determine whether Defendants have given "plausible reasons" why Plaintiff fails to state a claim.

### III.    Analysis

"Section 1983 creates a private right of action against any 'person' who violates the plaintiff's federal rights while acting under color of state law." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Under § 1983, as interpreted in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978), and its progeny, a local government entity such as the City of Chicago qualifies as a "person" that may be held liable for a violation of a citizen's constitutional rights if an "official policy, widespread custom, or action by an official with policy-making authority was the moving force behind [the] constitutional injury." *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) (internal quotation marks omitted). "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Limiting liability to injuries resulting from policies or practices ensures that municipalities are held liable not vicariously for the acts of their employees, but only "for [their] own violations of the federal Constitution and laws," based on "conduct that is properly attributable to the municipality itself." *First Midw. Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

The gist of Plaintiff's complaint seems to be that Chicago police officers have a pattern or practice, *i.e.*, a "widespread custom," of taking him from his house to hospitals, including Roseland Hospital, without his consent. Defendants argue that Plaintiff does not state a *Monell* claim because, among other reasons, Plaintiff does not plausibly allege that the actions which caused any violations of his constitutional rights can be fairly attributed to the City or to Roseland Hospital, rather than to their employees. Roseland Hospital also argues that (1) it is not a state actor, so it cannot be liable under § 1983 for any sort of constitutional violation; and (2) to the extent

4

Plaintiff's theory is that Roseland Hospital conspired with Chicago police officers to violate his constitutional rights, Plaintiff has not plausibly alleged any conspiracy.

### A. City of Chicago's Motion to Dismiss

To reiterate, there are three categories of municipal action that may subject a municipality to liability under *Monell*: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (internal quotation marks omitted). Plaintiff makes no allegations that might even arguably fit into the first or third category, leaving only the second. To state a claim under this theory, however, Plaintiff must "allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). In other words, Plaintiff must plead sufficient factual matter to plausibly allege that the practice was "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Demos v. Schneider*, No. 23 CV 741, 2023 WL 7166730, at *4 (N.D. Ill. Oct. 27, 2023) (internal quotation marks omitted); *see Phelan v. Cook Cnty.*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016); *Grieveson v. Anderson*, 538 F.3d 763, 774-75 (7th Cir. 2008). To the extent he relies on the numerosity of the incidents he describes, it must be large enough to permit the inference that they are not merely "isolated incidents." *Gill*, 850 F.3d at 344. "Allegations of 'a few sporadic examples of an improper behavior' will not suffice." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (quoting *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021)). It must be possible instead to infer that "there is a policy at issue rather than a random event or even a short series of random events." *See Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020).

Plaintiff describes, at most, six incidents across a time-period of approximately fifteen years. In each of these incidents, he is the only person whose constitutional rights are violated. Particularly considering that the details and circumstances of some of the incidents differ from one another, this is not enough to plausibly allege a widespread practice. *See Story v. Dart*, No. 19-CV-2476, 2023 WL 2612622, at *9 (N.D. Ill. Mar. 23, 2023) (concluding that the plaintiff did not state a *Monell* claim based on six incidents over two years where the incidents were "'so few and far between that they could not plausibly be described as so persistent and widespread as to practically have the force of law'" (quoting *Bridges*, 950 F.3d at 480)); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 793 (N.D. Ill. 2013) (citing *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002)); *Demos*, 2023 WL 7166730, at *4 (citing *Grieveson*, 538 F.3d at 774); *Wadelton v. Whiteside Cnty.*, No. 23-CV-50104, 2024 WL 1521452, at *2-3 (N.D. Ill. Apr. 8, 2024); *see also Allen v. Bd. of Trs. Rock Valley Coll.*, No. 19-CV-05465, 2021 WL 4034067, at *6 (N.D. Ill. Sept. 3, 2021) ("An alleged discriminatory practice . . . cannot reasonably be described as 'widespread' if it affects only one person."). Plaintiff does not state a *Monell* "pattern or practice" claim against the City of Chicago.

### B. Roseland Hospital's Motion to Dismiss

Any *Monell* claim against the hospital fails for the same reason the *Monell* claim against the City of Chicago fails: Plaintiff has not plausibly alleged that Roseland Hospital had any widespread practice that was so pervasive as to amount to a policy. To the extent the incidents Plaintiff describes involved Roseland Hospital (not all of them do), they are as consistent with the theory that they are a "series of random events" as with any theory that they represent a pattern or practice pervasive enough to amount to a policy. *Bridges*, 950 F.3d at 479; *see Brooks*, 578 F.3d at 581-82.

The Court need go no farther, but it notes that the other reasons Roseland Hospital gives for dismissal are equally convincing. First, Plaintiff does not plausibly allege that Roseland Hospital operated under color of state law. *See generally Scott v. Univ. of Chicago Med. Ctr.*, 107 F.4th 752, 757 (7th Cir. 2024); *see also Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *7 (N.D. Ill. Aug. 20, 2025). The only theories by which it might even arguably have done so are the "joint action" or "conspiracy" theory, to the extent it conspired with Chicago police officers, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), or the theory that it was performing a function that has traditionally been "the exclusive prerogative of the State," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974), such as caring for people whom law enforcement officers have taken into custody, *see Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009). But Plaintiff has not pleaded sufficient facts to support any plausible inference of a "'concerted effort'" that might amount to a conspiracy, *see Q.J.*, 2025 WL 2410472, at *8 (quoting *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017)), nor has it pleaded sufficient facts to support a theory that it was voluntarily performing a public function rather than providing a service to someone presented for emergency treatment on a limited, transitory basis, *see Rodriguez*, 577 F.3d at 827-28.

It is not clear whether Plaintiff intends to assert a claim against Roseland Hospital under 42 U.S.C. § 1985(3) for a conspiracy to commit civil rights violations, but, in an abundance of caution, Roseland Hospital argues that 1985(3) does not apply. Although a private entity can be liable for conspiring with a state actor under § 1985(3), there must be some sort of class-based animus, and Roseland Hospital argues that Plaintiff has not plausibly alleged any. The hospital is correct. *See Hamilton v. Cnty. of Dane*, No. 22-CV-504, 2023 WL 3721480, at *3 (W.D. Wis. May 30, 2023) ("Under settled law, the equal protection violation necessary to predicate a § 1985(3) claim must be a race-based or other class-based violation, not a class-of-one violation." (internal quotation marks omitted)) (citing *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 634 (7th Cir. 2018)). Additionally, as the Court intimated above in relation to the state-action requirement, Plaintiff's complaint lacks sufficient factual matter to give rise to any plausible inference of a conspiracy, as there is "not a whiff of a conspiratorial agreement or any improper complicity." *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011). It follows that the complaint does not state a plausible claim by raising any right to relief under § 1985(3) above a speculative level. *See Cannon v. City of Anna, Illinois*, No. 22-CV-981, 2023 WL 2349344, at *8 (S.D. Ill. Mar. 3, 2023) (citing *Redd*, 663 F.3d at 292); *Hernandez v. Dart*, 635 F. Supp. 2d 798, 810 (N.D. Ill. 2009); *see also*

6

*Brooks*, 578 F.3d at 581-82, *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1068 (N.D. Ill. 2015).

For all the foregoing reasons, the Court concludes that Defendants have provided plausible reasons for dismissing Plaintiff's complaint. As stated above, Plaintiff has not filed a response brief to show why his complaint should survive the motions to dismiss, whether because there is some unmentioned legal theory he could take advantage of or factual allegations sufficient to establish, if proven, his right to relief. He has, therefore, waived his opportunity to so demonstrate, under *Kirksey* and its progeny, and the Court concludes that dismissal of this case is proper. Given that Plaintiff has already had a chance to amend his complaint to cure defects identified upon adversarial testing, and it appears that he has put forth his best case as to how his rights were allegedly violated, any further amendment would be futile, and the dismissal is therefore with prejudice and without leave to amend. *Gurnee Motel v. Vill. of Gurnee*, No. 24 CV 9603, 2025 WL 1531144, at *6 (N.D. Ill. May 29, 2025) (citing *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022)); *McNulty v. Glorioso*, No. 22-CV-1139-BHL, 2022 WL 16530884, at *3 (E.D. Wis. Oct. 28, 2022) (citing *Stanard v. Nygren*, 658 F.3d 792, 796-97 (7th Cir. 2011)); *Garza v. Cervantes*, No. 14 C 923, 2015 WL 468748, at *2 (N.D. Ill. Feb. 3, 2015). This case is terminated.

**SO ORDERED.**                                                                                        **ENTERED: October 17, 2025**

_____
**HON. JORGE ALONSO**
**United States District Judge**